UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——————

| | | |
|---|---|---|
| LANONNA NORMAN o/b/o | ) | |
| MDN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11-cv-903 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review

of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to

child's supplemental security income (SSI) benefits.  On October 18, 2007, Lanonna Norman filed

an application for SSI benefits on behalf of her then-8-year-old son, MDN, claiming an October 1,

2007 onset of disability.[1]  (A.R. 85-98).  Plaintiff's claim was denied on initial review.  (A.R. 58-61).

On January 6, 2010, plaintiff received a hearing before an administrative law judge (ALJ).  (A.R. 23-

56).  On April 14, 2010, the ALJ issued a decision finding that plaintiff was not disabled.  (A.R. 8-

18).  On June 20, 2011, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision

became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits.
20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also
Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in
which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus,
November 2007 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying the claim for SSI benefits.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment.  (docket # 11).  Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1.    "The ALJ erred by not finding that TLM [sic] had an extreme limitation in the domain of acquiring and using information or that he met a Medical Impairment Listing[;]" and

2.    "The ALJ erred by failing to properly consider domain V (Caring for Yourself)."

(Statement of Errors, Plf. Brief at 16, docket # 14).  Upon review, the Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th

Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference."  *Buxton*, 246 F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently."  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ.").  "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **Standard for Finding Disability on a Child's Claim for SSI Benefits**

Under the Work Opportunity Act standard,[2] a child seeking SSI benefits can establish disability only by showing that he suffers from a medically determinable physical or mental impairment which results in marked and severe functional limitations and lasts for a period of not

---

[2] Personal Responsibility & Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, §§ 211-12, 100 Stat. 2105, 2188-94 (1996).

less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).  "The thrust of the legislation was most certainly to tighten eligibility."  *Encarnacion ex rel. George v. Barnhardt*, 331 F.3d 78, 83 (2d Cir. 2003).  Under the current three-step analysis, the Commissioner must ask:  (1) is the claimant engaged in substantial gainful activity? (2) are the impairments severe? and (3) do the impairments meet, medically equal, or functionally equal in severity a listed impairment and satisfy the durational requirements?  20 C.F.R. § 416.924(a); *see Elam ex rel. Golay v. Commissioner*, 348 F.3d at 125. As a result of the Work Opportunity Act, a child claimant must meet or equal a listed impairment in order to qualify for SSI benefits.  20 C.F.R. § 416.924(d)(2); *see Encarnacion*, 331 F.3d at 84; *Miller ex rel. Devine v. Commissioner*, 37 F. App'x 146, 148 (6th Cir. 2002).

By regulation, the ALJ utilizes six domains of functioning to assist in determining whether the combination of a minor's impairments equals the severity of a listed impairment:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) the claimant's ability to care for himself; and (6) the claimant's health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  Impairments must result in "marked" limitations in two domains or "extreme" limitations in one domain before they meet or equal a listed impairment's severity.  20 C.F.R. § 416.926a(d); *see Kelly v. Commissioner*, 314 F. App'x 827, 832 (6th Cir. 2009); *Encarnacion*, 331 F.3d at 85.  A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  *Id.*; *see Kelly*, 314 F. App'x at 832.  An "extreme" limitation is more than a

"marked" limitation. An "extreme" limitation is the rating given to the "worst limitations." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id*. "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*; *see Kelly*, 314 F. App'x at 832.

## <u>Discussion</u>

MDN was born in June 1999. He was a "school-age child" on the date the application for SSI benefits was filed and as of the date of the ALJ's decision. (A.R. 11). He has never engaged in substantial gainful activity. (A.R. 11). The ALJ found that MDN had the following severe impairments: "Attention Deficit/Hyperactivity Disorder (ADHD) and an anxiety disorder." (A.R. 11). MDN did not have an impairment or combination of impairments which met the requirements of any listed impairment. (A.R. 11-12). His impairments did not equal the requirements of any listed impairment because he did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. (A.R. 12). The ALJ found that MDN had "no limitations" in three of the six domains: moving about and manipulating objects, caring for himself, and health and physical well-being. (A.R. 16-18). He had "less than marked" limitations in two domains: acquiring and using information (A.R. 13-14) and attending and completing tasks (A.R. 14-15). The ALJ found that MDN had a marked limitation in interacting and relating with others. (A.R. 15-16). The ALJ found that MDN was not disabled, because he did not have an impairment or combination of impairments which met or equaled the requirements of any listed impairment. (A.R. 18).

**1.**

Plaintiff argues that the ALJ committed reversible error when he found that plaintiff did not meet the requirements of listing 112.06 and when he found that plaintiff had "less than marked" rather than "extreme" limitation in the domain of acquiring and using information.  (Plf. Brief at 16-17).

A.    Listing 112.06

It is well established that a claimant must show that he satisfies all the individual requirements of a listing.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d at 125.  "If all the requirements of the listing are not present, the claimant does not satisfy that listing."  *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002).  "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment."  *Elam*, 348 F.3d at 125.

"The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled."  *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations and citations omitted).  "The structure of the mental disorders listing for children under the age of 18 parallels the structure of the mental disorders listings for adults, but is modified to reflect the presentation of mental disorders in children."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(A).  Listing 112.06 for affective disorders contains the following requirements:

112.06 Anxiety Disorders:  In these disorders, anxiety is either the predominant disturbance or is experienced if the individual attempts to master symptoms, e.g., confronting the dreaded

-6-

object or situation in a phobic disorder, attempting to go to school in a separation anxiety disorder, resisting the obsessions or compulsions in an obsessive compulsive disorder, or confronting strangers or peers in avoidant disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented findings of at least one of the following:

1.  Excessive anxiety manifested when the child is separated, or separation is threatened, from a parent or parent surrogate; or

2.  Excessive and persistent avoidance of strangers; or

3.  Persistent unrealistic or excessive anxiety and worry (apprehensive expectation), accompanied by motor tension, autonomic hyperactivity, or vigilance and scanning; or

4.  A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

5.  Recurrent severe panic attacks, manifested by a sudden unpredictable onset of intense apprehension, fear, or terror, often with a sense of impending doom, occurring on the average of at least once a week; or

6.  Recurrent obsessions or compulsions which are a source of marked distress; or

7.  Recurrent and intrusive recollections of a traumatic experience, including dreams, which are a source of marked distress;

AND

B.  For . . . children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.06.  The age-group criteria in paragraph B2 of 112.02 are

as follows:

For children (age 3 to attainment of age 18), resulting in at least two of the following:

a.  Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child,

-7-

when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02. The ALJ found that plaintiff "did not meet the level of severe, persistent and excessive symptoms as outlined under paragraph A or meet the requirements of 112.02B2, under paragraph B of 112.06." (A.R. 11). Plaintiff has not shown how he met any of the specific requirements of this listing, much less all of them. The ALJ's finding that plaintiff did not meet the requirements of listing 112.06 is supported by more than substantial evidence.

B.  ALJ's Failure to Find an Extreme Limitation

Plaintiff states that the ALJ committed reversible error when he found that plaintiff had a "less than marked" rather than "extreme" limitation in the "domain of acquiring and using information." (Plf. Brief at 16). There is no developed argument corresponding to this purported error. Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007). Even assuming that

plaintiff did not waive the issue, it is meritless. The ALJ's factual finding regarding the domain of acquiring and using information (A.R. 13-14) is supported by more than substantial evidence.

There is an obvious disconnect between plaintiff's statement of errors[3] and the body of his brief. In the latter, plaintiff challenges the ALJ's factual finding in the domain of interacting and relating with others: "MDN would maintain that he has established that he has extreme limitation in the domain of interacting and relating with others . . . ." (Plf. Brief at 17). This perfunctory argument is deemed waived. *See Clemente v. Vaslo*, 679 F.3d at 497.

Assuming that the argument is not waived, it is meritless. The ALJ found that plaintiff had a marked limitation in the domain of interacting and relating with others:

### Interacting and Relating with Others

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community. Because communication is essential to both interacting and relating, this domain considers speech and language skills children need to speak intelligibly and to understand and use language of their community (20 CFR 416.926a(i) and SSR 09-5p).

Social Security Rules provide that a school-age child without an impairment should be developing more lasting friendships with children who are of the same age. The child should begin to understand how to work in groups to create projects and solve problems. The child should have an increasing ability to understand another's point of view and to tolerate differences (e.g., playing with children from diverse backgrounds). The child should attach to adults other than parents (e.g., teachers or club leaders), and may want to please them to gain attention. The child should be able to talk to people of all ages, to share ideas, tell stories, and speak in a manner that both familiar and unfamiliar listeners readily understand (20 CFR 416.926a(i)(2)(iv) and SSR 09-5p).

---

[3]Among other things, plaintiff's statement of errors includes the initials of a different claimant. (Plf. Brief at 16).

Social Security regulation 20 CFR 416.926a(i)(3) and SSR 09-5p set forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty that children could have in interacting and relating with others are: (i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (e.g., in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency.

The claimant has marked limitation in interacting and relating with others. Partly as a result of his ADHD and partly due to anxiety resulting from past emotional trauma, the claimant shows his greatest limitation in the area of relating to others. He was found to be emotionally impaired as early as 2007 (Exhibit 2F)[A.R. 186-91]. His teacher noted significant problems with anger and respecting adults, as well as following rules (Exhibit 4E, page 4)[A.R. 125]. At one point, the claimant threatened to kill a teacher (Exhibit 6F)[A.R. 221-42]. However, treatment as an inpatient was of some help (Exhibit 14F, page 14)[A.R. 310]. Although there were some suspensions from school (Exhibit 14F, page 11)[A.R. 307], there was later improvement (Exhibit 14F, pages 8, 1)[A.R. 297, 304]. It was noted that some of the impairment to the claimant's emotional issues may have come simply from inconsistent structure in his life (Exhibit 14F, page 7)[A.R. 303]. The conclusion is that the claimant can behave properly when he wishes, but can behave very poorly when he is not motivated to cooperate.

(A.R. 15-16). Plaintiff makes no serious attempt to engage the ALJ's factual finding and the evidence supporting it. He resorts to accusing the ALJ of being lazy:

Essentially, the ALJ adopted the findings of the nonexamining psychologist who completed the Childhood Disability Form on February 1, 2008, although the ALJ did find that MDN's score was marked as opposed to less than marked for the domain of interacting and relating with others. This Court should note, however, that that form was completed BEFORE MDN was hospitalized two more times. And, in what may be one of the laziest opinions in the recollection of this writer, those hospitalizations are barely mentioned. Three recent and closely grouped psychiatric hospitalizations would certainly seem to be repeated episodes of decompensation of extended duration if this were a case involving an adult; when a child who is not yet ten years of age has such a record, how could he not meet the B criteria for a child which include marked impairments in age-appropriate and social functioning?

(Plf. Brief at 17).  It is not enough to point out evidence on which the ALJ could have based a decision in plaintiff's favor.  "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d at 477.

On February 1, 2008, Psychologist William Schirado, Ph.D., reviewed the available evidence and found that plaintiff had a "less than marked limitation in interacting and relating with others." (A.R. 252).  The fact that this expert endorsed a *lower* lever of impairment than the one that the ALJ found does nothing to undermine the ALJ's decision.  The ALJ's finding that plaintiff had a marked limitation was more favorable to plaintiff's claim for SSI benefits.

The ALJ noted that plaintiff was found to be emotionally impaired as early as 2007. (A.R. 186-91).  MDN had problems in third grade during the 2007-2008 school year as he struggled to adjust to a new elementary school.  He transferred after reportedly being subjected to inappropriate touching by a teacher at his former school.[4]  On September 19, 2007, MDN reported that he "misse[d] his former school and his friends there." (A.R. 194).  Plaintiff's mother described him as "a typical 8-year-old in most situations." (A.R. 194).  She stated that he would shout at her when he was excited and he could be defiant at times.  (A.R. 194).  Plaintiff was described as a "coordinated child who enjoys physical games and activities." (A.R. 192).  His health was "excellent." (A.R. 193).  Plaintiff's teachers reported that he "likes to be the center of attention and can become oppositional when he's asked to comply with school/classroom rules." (A.R. 193).

---

[4]Ronald Taylor, Jr. was convicted of second-degree criminal sexual conduct.  (A.R. 221). Plaintiff's mother stated that MDN was one of Taylor's victims.  (A.R. 29, 48-51, 183).

Plaintiff's problems "included inappropriate language, frequent classroom disruption, threatening language and defiance towards school rules and staff directions."  (A.R. 196).

On November 27, 2007, plaintiff was suspended for being loud and threatening to kill his teacher.  (A.R. 221, 233).  Plaintiff had no earlier hospitalizations and had never taken psychotropic medication.  (A.R. 223, 234).  On November 29, 2007, he was examined at Pine Rest Christian Mental Health Services.  Plaintiff had no history or physical findings which would prohibit full activities.  (A.R. 231).  He had a history of chronic problems with hyperactivity, distractibility, and poor impulse control, but had generally not been defiant or aggressive.  (A.R. 233).  He was very hyperactive, silly, and impulsive during the interview.  (A.R. 234).  He seemed to have "a lot of shows of bravado."  (A.R. 235).  The plan was to treat plaintiff's ADHD symptoms with Adderall.  Zyprexa would be used on a p.r.n. basis for agitation.  Therapy would focus on developing coping skills, improved impulse control, and improved concentration.  (A.R. 236).

On January 25, 2008, Ms. Norman told Dr. Tendero that MDN wanted all her attention, but she is raising five children and cannot devote all her attention to him.  (A.R. 309).  On March 13, 2008, plaintiff and his mother appeared at Pine Rest.  Dr. Garvin noted that plaintiff did not have any issues related to his physical health.  (A.R. 272).  Ms. Norman reported that plaintiff had hit her with a shoe while she was driving.  She stated that MDN was "biting, kicking, and swinging at people."  (A.R. 273).  He had no respect for teachers.  (A.R. 273).  Dr. Garvin noted that MDN was very compliant and cooperative during the examination.  (A.R. 270).  Dr. Schellenberg noted that MDN was concentrating well and inattention and hyperactivity no longer appeared to be a significant problem.  (A.R. 273).  MDN did have problems with disrespect, aggression and

-12-

irritability.  (A.R. 276).  Dr. Schellenberg initiated additional counseling and a trial of Zyprexa. (A.R. 276).

On April 23, 2008, plaintiff returned to Pine Rest.  He had been throwing things at his mother when she refused to allow him to watch television.  (A.R. 289).  A week earlier, he had been suspended from school for spitting on and attempting to bite a teacher and reportedly tried to jump out of a car his mother was driving.  (A.R. 289).  Dr. Garvin found that plaintiff had no medical issues.  (A.R. 288).  Dr. Schellenberg adjusted plaintiff's medications and initiated additional therapy to help MDN develop improved coping skills, impulse control, and anger management skills and insight.  (A.R. 291-92).

On September 12, 2008, it was noted that plaintiff was doing well in school.  (A.R. 304).  On November 7, 2008, Dr. Tendero noted that plaintiff was able to behave in an appropriate manner, but "wants to be the boss."  (A.R. 303).  Tendero observed that some of his emotional impairments may have come simply from "inconsistent structure" in his life.[5]  (A.R. 303).  On April 14, 2010, MDN testified that he was in the fifth grade and that he liked school (A.R. 34-35).  He had only one "time-out" during the year.  (A.R. 36).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Heston*, 245 F.3d at 534.  The ALJ's finding that plaintiff had a marked rather than an extreme limitation in the domain of interacting and relating with others is supported by more than substantial evidence.

---

[5]Ms. Norman was incarcerated for an unspecified period on a conviction for attempted felonious assault (A.R. 53-54) and has a "history of alcohol problems."  (A.R. 274-75).  In April 2008, Dr. Schellenberg noted that MDN spent time in an aunt's care.  (A.R. 290).

**2.**

Plaintiff argues that the ALJ committed reversible error "by failing to properly consider domain V (Caring for Yourself)." His argument is set forth verbatim below:

> Indeed, with regard to domain V, the ALJ makes the common error of simply addressing MDN's hygiene and not considering whether his behavior puts him at substantial risk of physical and other harm (17). The proper review of this domain is made clear at ssa.gov, where guides to childhood SSI case review (Childhood SSI: Supplemental Security Income Program – A Guide for Physicians and Other Health Professionals et al) are available for both medical and school personnel.

(Plf. Brief at 17-18). Plaintiff's argument is not supported by any legal authority,[6] and he makes no attempt to engage the ALJ's factual findings and the evidence supporting those findings. This issue is deemed waived. *See Clemente v. Vaslo*, 679 F.3d at 497.

Assuming that the issue had not been waived, it is meritless. The ALJ applied the appropriate standards as set forth in 20 C.F.R. § 416.926a(k) and SSR 09-7p and found that plaintiff had no limitation in the domain of caring for himself:

> This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways. This includes how the child copes with stress and changes in the environment and how well the child takes care of his own health, possessions, and living area (20 CFR 416.926a(k) and SSR 09-7p).

> Social Security rules provide that a school-age child without an impairment should be independent in most day-to-day activities (e.g., dressing and bathing), although he may still need to be reminded sometimes to do these routinely. The child should begin to recognize that he is competent in doing some activities but has difficulty doing others. The child should be able to identify those circumstances when he feels good about himself and when he feels bad. The child should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. The child should also begin to demonstrate consistent control over his behavior, and be able to avoid behaviors that are

---

[6]Plaintiff's reply brief fares no better. It contains a vague reference to "ssa.gov and other authorities." (Reply Brief at 3, docket # 16). The "other authorities" are never identified, and a general reference to a government website is not a basis for disturbing the Commissioner's decision.

-14-

unsafe or otherwise not good for him. At this age, the child should begin imitating more of the behavior of adults he knows (20 CFR 416.926a(k)(2)(iv) and SSR 09-7p).

Social Security regulation 20 CFR 416.926a(k)(3) and SSR 09-7p set forth some examples of limited functioning in this domain that children of different ages might have.  The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods.  In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain.  Some examples of difficulty children could have in caring for themselves are: (i) continues to place non-nutritive or inedible objects in the mouth (e.g., dirt, chalk); (ii) often uses self-soothing activities that are developmentally regressive (e.g., thumb-sucking or re-chewing food); (iii) does not feed, dress, toilet, or bathe self age-appropriately; (iv) engages in self injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or ignores safety rules; (v) does not spontaneously pursue enjoyable activities or interests (e.g., listening to music, reading a book); (vi) has restrictive or stereotyped mannerisms (e.g., head banging, body rocking); or (vii) has disturbances in eating or sleeping patterns.

The claimant has no limitation in the ability to care for himself.  Although he has the typical need for reminders, the claimant is able to perform his activities of daily care (Exhibit 3E)[A.R. 116-19] and has good hygiene (Exhibits 4E, page 6; 6F, page 4)[A.R. 127, 224].

(A.R. 17).  Plaintiff does not dispute that he was able to perform his activities of daily care.  20 C.F.R. § 416.926a(k)(1).  "Caring for yourself includes using your independence and competence to meet your physical needs, such as feeding, dressing, toileting, and bathing, appropriately for your age."  20 C.F.R. § 416.926a(k)(1)(ii).  The ALJ recognized that unsafe behavior was one of the factors to consider (A.R. 17), but it was certainly not the only factor.  *See* 20 C.F.R. § 416.926a(k).  Ms. Norman reported that plaintiff had engaged in some potentially dangerous activities, particularly in March and April of 2008, but for the entire period at issue, MDN remained in excellent physical health.  There is no evidence that he suffered any physical injury requiring hospitalization.  Although there is evidence on which the ALJ could have found some restriction, his factual finding that plaintiff had no limitation in the domain of caring for himself is supported by substantial evidence.  *See Jones v. Commissioner*, 336 F.3d at 477.  Further, even assuming that the ALJ committed error

-15-

by not finding some limitation in this domain, the error would be harmless, because plaintiff has not shown he had a marked or extreme limitation in the domain of caring for himself.  *See Parker ex rel A.L.P. v. Astrue*, No. 4:11-cv-2826, 2012 WL 4735466, at * 6 (N.D. Ala. Sept. 28, 2012); *Beasley ex rel. J.F. v. Astrue*, No. 3:10cv622, 2012 WL 4369762, at * 2 (S.D. Miss. Sept. 12, 2012); *Patterson ex rel. TJP v. Astrue*, No. 09-11621, 2010 WL 2218629, at * 4 (E.D. Mich. May 6, 2012) ("This error is harmless because only one 'marked' limitation does not establish that the claimant functionally met the Listing.").

## <u>Conclusion</u>

For the reasons set forth herein, judgment will be entered affirming the Commissioner's decision.


Dated:  November 20, 2012          /s/  Joseph G. Scoville
                                   United States Magistrate Judge

-16-